# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

November 8, 2010

No. 09-10850

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

COLIN DALAWN JACKSON, also known as Cory,

Defendant - Appellant

Appeals from the United States District Court
for the Northern District of Texas

Before JOLLY, DeMOSS, and DENNIS, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Colin Dalawn Jackson ("Jackson") appeals his conviction and sentence, following a jury trial, for conspiring to possess with intent to distribute more than five kilograms of cocaine, in violation of 21 U.S.C. § 846. Jackson primarily argues that the district court erred in admitting into evidence two notebooks received from Jackson's alleged coconspirator during a proffer session. The coconspirator did not testify or otherwise authenticate the notebooks, but they purportedly show the quantity of cocaine the coconspirator distributed to Jackson. Jackson contends that admitting the notebooks, and an investigating officer's testimony pertaining thereto, violated the Confrontation Clause of the Sixth Amendment; that the notebooks and testimony constitute hearsay; and

No. 09-10850

that the notebooks lacked sufficient authentication. Because the notebooks were not sufficiently authenticated, we hold that the district court abused its discretion in admitting the notebooks into evidence at trial, that this error violated Jackson's rights under the Confrontation Clause, and that the error was not harmless. We further hold that the evidence was sufficient to sustain Jackson's conviction absent admission of the notebooks into evidence. We therefore vacate the district court's judgment of conviction and sentencing and remand for further proceedings not inconsistent with this opinion.

I.

A federal grand jury indicted Jackson on April 22, 2008, on a single count of conspiring with Arturo Valdez ("Valdez") and other known and unknown persons, beginning on or about December 1, 2006 and continuing through August 1, 2007, to possess with intent to distribute more than five kilograms of cocaine. The evidence at trial included the following: Officer Christopher Hight, a Dallas police officer and task force officer of the Drug Enforcement Administration (DEA), testified that he was involved in surveillance and interception of communications concerning various drug cartels, including a drug-trafficking organization headed by one Juan Reyes-Mejia. Hight testified that he and other officers had identified a cell operating within this organization, headed by Arturo Valdez. Valdez worked as a cocaine distributor in the larger drug-trafficking organization, collected money from the sale of cocaine that he transferred to couriers for transport to Mexico, had customers of his own, and was a trusted member of the drug-trafficking cartel.

Wiretap surveillance disclosed multiple conversations that Valdez had with an individual identified in the phone conversations as "Cory." Hight testified that he became familiar with Cory's voice over the course of the surveillance and, having subsequently spoken with the defendant, Hight testified that "Cory's" voice was that of the defendant, Mr. Jackson. The jury

heard several recordings of the phone conversations between Valdez and "Cory," and Valdez and other persons, which Hight interpreted for the jurors as reflecting plans to engage in various cocaine and other narcotics transactions.

In August 2007, a task force arrested over 30 individuals involved in wide-ranging alleged drug-trafficking conspiracies. Valdez was arrested by DEA agents on August 16, 2007. Apparently seeking to work out a plea agreement and obtain leniency at sentencing, Valdez agreed to a proffer session with law enforcement concerning his knowledge of the drug-trafficking conspiracy. During that session, Valdez and his attorney produced, without comment as far as the record is concerned, two notebooks to Officer Hight containing 78 pages of handwriting, with numbers, notations, and names. Certain lines of text in the notebooks appear to be names or abbreviations for names. The names "Cory," "Corey" and "Cor." appear in several places in the notebooks; the government's witness testified that these writings identify Jackson. Alongside and beneath several of the alleged references to Jackson are various numbers. The government's witness testified, and the government asserted in its closing argument, that these numbers reflect payments and amounts of cocaine, totaling approximately 350 kilograms, that were given to Jackson in the course of a conspiracy to possess and distribute cocaine.

The government introduced the notebooks at trial solely through the testimony of Officer Hight, who twice stated that his analysis of them was "based on [his] experience as an officer and nothing from what was obtained from Mr. Valdez." Officer Hight further testified why drug traffickers often keep ledgers, and he explained the various entries in the ledgers that he interpreted as representing cocaine transactions involving Jackson. He testified that he believed the numbers in the notebooks reflect quantities of cocaine, rather than marijuana, because the numbers are consistent with information the police had gathered through telephone surveillance. Hight also stated that the ledgers'

No. 09-10850

references to "Nove" and "Nov." are references to Noe Godines, another participant in the drug conspiracy. Hight testified at length concerning the notebooks' contents, interpreting various numbers and calculations for the jury.

At trial, Jackson objected to admission of the notebooks on Sixth Amendment, hearsay, and authentication grounds. These objections were overruled, and the jury found Jackson guilty of one count of conspiring to possess with intent to distribute more than five kilograms of cocaine.[1] Jackson timely appealed to this Court.

## II.

The threshold question before us is whether the notebooks purporting to be drug ledgers were properly authenticated such that they fall within a recognized exception to the Confrontation Clause. The government argues that the notebooks are nontestimonial business records that by their nature do not offend the Confrontation Clause. Alternatively, the government contends that the notebooks are nontestimonial statements made by a coconspirator during the course and in furtherance of a conspiracy.

In this case, proper authentication of the notebooks is determinative of whether the introduction of that evidence violated the Constitution, *i.e.*, the Confrontation Clause.[2] Review of a trial court's evidentiary rulings is for abuse of discretion, subject to harmless error review.[3] *United States v. Jimenez-Lopez*, 873 F.2d 769, 771 (5th Cir. 1989). "A trial court abuses its discretion when its

---

[1] Jackson's 235-month prison sentence was based largely on drug-quantity calculations made using information in the drug ledgers supplied by Valdez and admitted at trial.

[2] *See* discussion *infra* Part II.A.

[3] We note that we have said on more than one occasion that our review of evidentiary rulings is heightened in criminal cases. *See, e.g.*, *United States v. Garcia*, 530 F.3d 348, 351 (5th Cir. 2008); *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008); *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002). Although this standard has never been fleshed out or defined, we need not bother to do so because we need not heighten our scrutiny of the trial court's discretion to arrive at the conclusion we reach today.

ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Yanez Sosa*, 513 F.3d 194, 200 (5th Cir. 2008) (internal citations omitted).

Applying the foregoing standard, we conclude that the district court abused its discretion in admitting the notebooks given to Officer Hight by Arturo Valdez because they were not properly authenticated. The notebooks fall outside of the business records and coconspirator statement exceptions to *Crawford* and, as presented to the jury here, are testimonial in nature.

## A.

A properly introduced, authenticated business record that meets the standards of the Federal Rules of Evidence ordinarily is nontestimonial and will not violate the Confrontation Clause. Thus, we first address whether the notebooks were properly authenticated as business records in accordance with Federal Rule of Evidence 803(6).[4] In *Crawford v. Washington*, the Supreme Court held that "[w]here testimonial evidence is at issue, . . . the Sixth Amendment demands what the common law required: unavailability and a prior opportunity for cross-examination." 541 U.S. 36, 68 (2004). While the Court did

---

[4] Rule 803(6) provides an exception to the hearsay rule for

> [a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses, made at or near the time by, or from information transmitted by, a person with knowledge, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record or data compilation, all as shown by the testimony of the custodian or other qualified witness, or by certification that complies with Rule 902(11), Rule 902(12), or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, association, profession, occupation, and calling of every kind, whether or not conducted for profit.

FED. R. EVID. 803(6).

No. 09-10850

not define "testimonial," it noted that business records fall outside this category. *Id.* at 56. In general, "after *Crawford*, business records are not testimonial in nature and their admission at trial is not a violation of the Confrontation Clause."[5] *United States v. Morgan*, 505 F.3d 332, 339 (5th Cir. 2007).

The Confrontation Clause claim before us today turns on authentication of the notebooks. If the notebooks were not properly authenticated, then they do not qualify as business records and their admission into evidence violates the Confrontation Clause. We reach this conclusion here because the notebooks contain entries that, when offered into evidence as records of regular business activity, purport to be Arturo Valdez's "solemn declaration[s] or affirmation[s] made for the purpose of establishing or proving some fact[s]"—namely, the existence and amounts of his cocaine transactions with Jackson. *Crawford*, 541 U.S. at 51. If not authentic business records, the ledger entries are merely statements, made at an unknown time and conveyed at a proffer session, that relate (through Officer Hight's translation for the jury) the very testimony that Valdez "would be expected to provide if called at trial." *Melendez-Diaz*, 129 S.Ct. at 2532. Irrespective of the fact that they were volunteered, the notebook entries "do precisely *what a witness does* on direct examination." *Davis v. Washington*, 547 U.S. 813, 830 (2006); *see also id.* at 822 n.1 ("The Framers were no more

---

[5] We recognize, of course, that there may be exceptions to this general observation because the Confrontation Clause, as a constitutional right, cannot be circumscribed by merely invoking the evidentiary rules of hearsay. For example, although "[d]ocuments kept in the regular course of business may ordinarily be admitted at trial despite their hearsay status, . . . that is not the case if the regularly conducted business activity is the production of evidence for use at trial." *Melendez-Diaz v. Massachusetts*, 129 S.Ct. 2527, 2538 (2009). Indeed, "[b]usiness and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial." *Id.* at 2539–40. That is, business records are not *per se* nontestimonial, but they are *generally* so.

No. 09-10850

willing to exempt from cross-examination volunteered testimony . . . than they were to exempt answers to detailed interrogation.").

The government plainly introduced the notebooks to prove the truth of the matter asserted: Jackson's transacted cocaine deals with Valdez. Valdez did not appear at trial, was not shown to be unavailable for trial, and was not cross-examined. Thus it is clear that in this case, if the ledgers do not satisfy the requirements of business records, they are prohibited as testimonial evidence that violates the Confrontation Clause. *See United States v. Gonzalez*, 436 F.3d 560, 576 (5th Cir. 2006) ("[T]he Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him.").

"The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." FED. R. EVID. 901(a). "A proponent may authenticate a document with circumstantial evidence, including the document's own distinctive characteristics and the circumstances surrounding its discovery."[6] *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008) (internal citations omitted). "[T]his Court does not require conclusive proof of authenticity before allowing the admission of disputed evidence. . . . Rule 901 does not limit the type of evidence allowed to authenticate a document. It merely requires some evidence which is sufficient to support a finding that the evidence in question is what its proponent claims it to be." *Jimenez-Lopez*, 873

---

[6] We have further held that *Crawford* does not apply to the foundational evidence offered to authenticate business records in preliminary determinations of the records' admissibility. *Morgan*, 505 F.3d at 339. Thus we need not address Jackson's claim that the testimony Officer Hight offered to authenticate the notebooks violated his rights under the Confrontation Clause.

No. 09-10850

F.2d at 772.  The standard for authentication is not a burdensome one.  *United States v. Barlow*, 568 F.3d 215, 220 (5th Cir. 2009).  However, the government has failed to meet it in this case.

1.

The government argues that the notebooks were properly admitted as nontestimonial business records generated in the regular course of Mr. Valdez's drug-trafficking enterprise.  The first question presented is whether Officer Hight is a "qualified witness" for authentication purposes.  Under Rule 803(6), "either the custodian of the business records or 'other qualified witness' [must] lay a foundation before the records are admitted."  *United States v. Brown*, 553 F.3d 768, 792 (5th Cir. 2008).  The witness must make some showing (1) that the notebooks record "acts, events, conditions, opinions, or diagnoses;" (2) that the record was made "at or near the time" those events or conditions took place; (3) that the record was made "by, or from information transmitted by, a person with knowledge;" (4) that the record was made "in the course of a regularly conducted business activity;" and (5) that "it was the regular practice of that business activity" to make such a record.  FED. R. EVID. 803(6).  "'There is no requirement that the witness who lays the foundation be the author of the record or be able to personally attest to its accuracy.'"  *Brown*, 553 F.3d at 792 (quoting *United States v. Duncan*, 919 F.2d 981, 986 (5th Cir. 1990)).  Rather, "'[a] qualified witness is one who can explain the record keeping system of the organization and vouch that the requirements of Rule 803(6) are met.'"  *Id.* (quoting *United States v. Iredia*, 866 F.2d 114, 120 (5th Cir. 1989)).

We have applied these principles in *Brown*, where we held that the district court properly excluded testimony from an expert witness called to lay the foundation for business records from a pharmacy's computer system.  Although he had never worked at the pharmacy in question, the witness "knew the [pharmacy's computer] program well and had statistics training that allowed

No. 09-10850

him to parse and present the large amounts of data in the records clearly." *Id.*
We found this insufficient for purposes of Rule 803(6). Specifically, we stated
that the witness's "expertise in statistics and in the computer program used did
not give him any knowledge about [the pharmacy's] record keeping practices.
He knew about the pharmacy computer system, how to operate the system, and
how to extract information from it, but that is not knowledge about the
pharmacy's record keeping." *Id.* at 793.

*Brown* informs this case in clear terms. It is not the record keeping of
drug-trafficking organizations *generally* that is most relevant; the records must
be authenticated by someone with at least some knowledge of the record keeping
of the *particular* distribution cell operated by Arturo Valdez. Officer Hight was
the only witness called by the government to lay a foundation of authenticity for
the notebooks.[7] He testified that Valdez handed over these ledgers to him in the
course of a discussion of a proffer, that is, hoping to get a better deal for himself.
Hight did not testify that Valdez had said anything when producing the ledgers
which allegedly incriminate others. Thus the record before us does not reflect
who actually prepared these ledgers and entries and under what circumstances.
Neither Valdez nor any other member of the drug-trafficking organization
testified that the ledgers were kept in the regular course of a drug-trafficking
enterprise. *Cf. Duncan*, 919 F.2d at 986–87 (upholding the admission of
insurance company records where representatives of the insurance companies
testified that those records were kept in the regular course of the companies'
business). Hight did testify that his analysis of the notebooks was based on
their contents and his experience as a drug enforcement officer. While he spoke
as one familiar with drug ledgers generally, he certainly did not speak as a
member of the drug-trafficking organization or as one with knowledge of

---

[7] The custodian of the notebooks, Arturo Valdez, did not testify.

Valdez's ledger-keeping practices. We therefore hold that "[a]midst all of his unquestioned expertise," Officer Hight did not have the "necessary familiarity" with the record-keeping procedures of Valdez's drug-trafficking cell. *Brown*, 553 F.3d at 792.

Nor could Officer Hight vouch that other requirements of Rule 803(6) had been met. *See id.* Presented with facts analogous to those in the instant case, we recently held that a trial court abused its discretion in admitting spreadsheets into evidence as business records because the witness was not qualified to authenticate the documents. *See CFTC v. Dizona*, 594 F.3d 408, 416 (5th Cir. 2010). The investigator admitted that she had not interviewed any employee of the company regarding its record keeping, that she did not know whether the spreadsheets were made at or near the time of the recorded commodities trade, and that she did not know whether the spreadsheets were made by a person with knowledge of the trade. *Id.* Similarly, there is no evidence that Officer Hight interviewed Valdez or anyone else about the drug-trafficking organization's record keeping. Hight acknowledged that the events recorded in the ledgers could have taken place at a time outside of the course of the conspiracy. Moreover, as we have explained, the record does not reflect whether the ledgers were prepared by someone with knowledge of the recorded transactions. In the light of this testimony, we hold that Officer Hight was not a qualified witness for purposes of authentication because the government submitted no evidence that he had knowledge—either first or second hand—of the Valdez organization's record-keeping practices, and because Hight could not vouch that the requirements of Rule 803(6) had been met.

2.

We specifically repeat ourselves to remind that authentication of a business record requires a showing (1) that it records acts, events, conditions, opinions, or diagnoses; (2) that the record was made at or near the time those

events took place; (3) that the record was made by, or from information transmitted by, a person with knowledge; (4) that the record was made in the course of a regularly conducted business activity; and (5) that it was the regular practice of that business activity to make such a record. FED. R. EVID. 803(6). Even if all of these requirements are met, however, Rule 803(6) is not satisfied if "the source of information or the method or circumstances of preparation indicate lack of trustworthiness." *Id.* Thus, as we have previously held, under Rule 803(6) great emphasis is placed on the reliability or trustworthiness of the records being introduced. *United States v. Veytia-Bravo*, 603 F.2d 1187, 1189 (5th Cir. 1979). The evidence before us casts substantial doubt upon the notion that the ledgers in this case can be trusted as records kept in the course of a regularly conducted business activity.

Although we have not spelled out the precise contours of trustworthiness necessary to authenticate drug ledgers, we have upheld the authenticity of drug ledgers as business records where (1) the ledgers were found in the home of a known drug trafficker, and the government's witness testified (2) that he worked for the drug trafficker who allegedly created the ledgers; (3) that the ledgers resembled those which the drug trafficker maintained; and (4) that the handwriting on the ledgers was similar to the drug trafficker's handwriting. *United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993).

This case, however, is distinguishable in critical ways. Although there is no dispute that Mr. Valdez is a known drug trafficker, the ledgers were not found in Valdez's home; they were produced by Valdez at a proffer session, under circumstances that raise questions in and of themselves. Officer Hight conceded that one of Valdez's motives in turning over the ledgers was to obtain a benefit for himself. We have no information in the record to indicate that Valdez told Officer Hight that he was the recorder of the ledgers. No handwriting analysis was performed on the notebooks, and no member of the drug-trafficking

No. 09-10850

organization testified relating to their trustworthiness. For his part, Officer Hight testified that he was not able personally to vouch for the credibility of any entries in the ledgers. The reliability of the notebooks is not redeemed by any visible characteristics identified in the record. The ledger entries do not include the term "cocaine" and thus do not facially convey that they are applicable to the conspiracy charged. There are no dates recorded on the ledgers other than a lone reference in each to February 9 (without a year). These features simply reinforce our conclusion that Valdez's notebooks do not bear sufficient indicia of reliability to qualify them as admissible records kept in the course of a regularly conducted business activity.[8]

3.

We certainly do not overlook that the trial judge exercises broad discretion in ruling on the admissibility of evidence. *Veytia-Bravo*, 603 F.2d at 1189. But here the district court gave no reasons for its decision to admit the notebooks; it simply admitted the ledgers without comment. As the foregoing discussion makes clear, there is very little support for qualifying these ledgers as admissible business records under Rule 803(6). Indeed, the government has failed to satisfy virtually all of the authentication requirements with respect to the alleged drug ledgers, and the district court has said nothing. Thus satisfied

---

[8] In some settings, outside the business records exception, we have held that a witness's direct knowledge of the particular interactions recorded in a document is sufficient to establish that witness's qualification to authenticate the document. *See Barlow*, 568 F.3d at 220 (upholding the authenticity of online-chat transcriptions by one who participated in and thus had direct knowledge of the chats). But here the government has not shown that Officer Hight had direct knowledge of the transactions allegedly recorded in the notebooks. To be sure, Officer Hight had listened to a number of telephone calls between Valdez and Jackson. He testified that he believed numbers in the notebooks represent quantities of cocaine because they are consistent with information he gathered from intercepted phone calls, whatever this general and unspecific observation may actually mean. However, Officer Hight did not connect any specific numbers recorded in the ledgers with amounts of cocaine that he had heard discussed during telephone surveillance; nor did he participate in or observe any of the alleged transactions that Valdez's ledgers purport to record.

12

No. 09-10850

that the district court's assessment of the evidence was clearly erroneous, we conclude that admission of the notebooks under the business records exception was an abuse of discretion.

B.

Like business records, statements made by a coconspirator during the course and in furtherance of a conspiracy fall within a recognized exception to the hearsay rules. FED. R. EVID. 801(d)(2)(E). Such statements "are by their nature generally nontestimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination." *United States v. Holmes*, 406 F.3d 337, 348 (5th Cir. 2005). As with business records, documents purporting to be the statements of a coconspirator made in the course and in furtherance of a conspiracy must be authenticated in order to be admissible.

Whether the notebooks represent coconspirator statements made during and in furtherance of a conspiracy depends on whether Valdez made those records in the course of his drug-trafficking enterprise. We have already found the evidence insufficient for authentication on these grounds. Given this lack of predicate, we hold there is not a sufficient basis to find that the notebooks are coconspirator statements in furtherance of a conspiracy.

III.

Having concluded that the admission of the notebooks was an abuse of discretion that violated Jackson's Confrontation Clause rights, we turn now to whether this error was harmless. For the reasons that follow, we hold that the error was not harmless beyond a reasonable doubt.

"A defendant convicted on the basis of constitutionally inadmissible Confrontation Clause evidence is entitled to a new trial unless it was harmless in that 'there was [no] reasonable possibility that the evidence complained of might have contributed to the conviction.'" *United States v. Alvarado-Valdez*,

13

No. 09-10850

521 F.3d 337, 341 (5th Cir. 2008) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (internal citations omitted).  If "the government's closing argument relied on [the] very evidence" that offends the Confrontation Clause, then "[w]e cannot see how the government can conclusively show that the tainted evidence did not contribute to the conviction."  *Id.* at 342–43.

In its closing argument in this case, the government clearly relied on the drug ledgers provided to Officer Hight by Arturo Valdez.  The government's attorney explicitly stated that the ledgers showed cocaine distribution in excess of 350 to 400 kilograms to Mr. Jackson, and that these entries amount to proof beyond a reasonable doubt of Jackson's participation in the conspiracy with Valdez.  In the light of this reliance, and notwithstanding the other evidence implicating Jackson in the conspiracy—which, we acknowledge, is very substantial and clearly sufficient to support the conviction even in the absence of the ledgers—the government cannot conclusively show, under controlling precedents, that the notebooks did not contribute to the conviction.  The trial court's error was not harmless beyond a reasonable doubt.[9]

IV.

Our holding thus requires us to vacate Jackson's conviction and remand for further proceedings.  We do so because the evidence in the record is sufficient for a reasonable jury to convict Jackson even when the drug ledgers are excluded.  This other evidence includes a number of telephone conversations, referred to earlier in this opinion, between Jackson and his alleged coconspirator Valdez regarding the sale and purchase of cocaine, which are sufficient, in and of themselves, to support a finding of guilt beyond a reasonable doubt.  *See United States v. Watkins*, 591 F.3d 780, 788 (5th Cir. 2009) ("Each element" of a conspiracy to possess and distribute more than five kilograms of cocaine "may

---

[9] In the light of this conclusion, we need not address Jackson's additional grounds for appeal.

be inferred from circumstantial evidence; that is, the 'agreement may be inferred from a concert of action' and '[k]nowledge of a conspiracy and voluntary participation . . . may be inferred from a collection of circumstances.'") (quoting *United States v. Casilla*, 20 F.3d 600, 603 (5th Cir. 1994) (internal citations omitted)). The connection between Jackson and Valdez is further substantiated by photographs of the two men together. Under a review for sufficiency, this evidence must be viewed in the light most favorable to the verdict, giving "full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). To be sure, on appeal Jackson does not argue the insufficiency of the evidence for conviction. We therefore conclude that the remaining evidence is clearly sufficient to support a reasonable jury's finding that Jackson conspired to possess with intent to distribute more than five kilograms of cocaine. Accordingly, Jackson's conviction is vacated and the case is remanded for further appropriate proceedings, including an opportunity for a new trial.

## V.

We sum up: Under the general exception to the Confrontation Clause for business records, ledgers allegedly containing records of cocaine transactions involving the defendant must be authenticated in order to be admissible. For an authenticating witness to be "qualified" for purposes of Rule 803(6), he or she must be able to explain the record-keeping system of the organization that made the records in question and vouch that the requirements of Rule 803(6) are met. Under this standard, the government witness proffered to authenticate the ledgers in this case was not a "qualified witness." The government witness did not have knowledge of the record-keeping procedures of the drug-trafficking cell led by the coconspirator, nor was he able to vouch that the requirements of Rule 803(6) had been met. Observing that the primary emphasis of Rule 803(6) is on

reliability and trustworthiness of the evidence, we have further held that the ledgers in this case did not bear sufficient indicia of reliability for purposes of authentication.  We have thus concluded that the district court abused its discretion in admitting the notebooks into evidence without explanation, and that this error violated Jackson's rights under the Confrontation Clause. Because the government relied on this inadmissible evidence in its closing argument, there is at least a reasonable possibility that the evidence contributed to the jury's verdict.  Thus, the district court's error was not harmless.  Finally, we hold that the remaining evidence against Jackson was sufficient to support the conviction, and that therefore this case is remanded for an opportunity for a new trial and such other proceedings as are appropriate.

For the foregoing reasons, the judgment of the district court is VACATED and the case is REMANDED for further proceedings not inconsistent with this opinion.

VACATED and REMANDED.

No. 09-10850

DENNIS, Circuit Judge, concurring and assigning additional cautionary reasons.

I heartily concur in the majority's holding that the drug ledgers were not properly authenticated; that the trial court erred in admitting them into evidence;[1] that their introduction violated Jackson's Sixth Amendment right to be confronted with a witness against him, *see Crawford v. Washington*, 541 U.S. 36 (2004); and that the error requires reversal because it was not harmless. However, parts of the majority opinion could nevertheless be misread to imply that authenticated business records, which are, nonetheless, testimonial statements, may be introduced without violating the Confrontation Clause. I strongly disagree with that conception and add these reasons to explain why the majority opinion cannot be read that way.

The Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Supreme Court's decisions running from *Crawford*, through *Davis v. Washington*, 547 U.S. 813 (2006), and up to *Melendez-Diaz v. Massachusetts*, 129 S. Ct. 2527 (2009), clearly hold that the Confrontation Clause is not hedged by exceptions to the hearsay rule. Before *Crawford* redefined our understanding of this right, *Ohio v. Roberts*, 448 U.S. 56 (1980), "permitted the admission of a hearsay statement made by a declarant who was unavailable to testify if the statement bore sufficient indicia of reliability, either because the statement fell within a firmly rooted hearsay

---

[1] I agree with the majority's conclusion that the ledgers were not properly authenticated and therefore, were improperly admitted as statements by a coconspirator under Federal Rule of Evidence 801(d)(2)(E), or as business records under Federal Rule of Evidence 803(6). The Federal Rules of Evidence exclude from the definition of hearsay, statements by coconspirators, and separately list hearsay "exceptions," which include business records. *Compare* Fed. R. Evid. 801, *with* Fed. R. Evid. 803. This distinction between non-hearsay and exceptions to the hearsay rule has no apparent impact on the analysis in this opinion. Therefore, for the sake of clarity, I will refer to Rule 801(d) exclusions and Rule 803 exceptions interchangeably as "hearsay exceptions."

No. 09-10850

exception or because there were 'particularized guarantees of trustworthiness' relating to the statement in question.'" *See Whorton v. Bockting*, 549 U.S. 406, 412 (2007) (quoting *Roberts*, 448 U.S. at 66).  *Crawford* overruled *Roberts* and "held that '[t]estimonial statements of witnesses absent from trial' are admissible 'only where the declarant is unavailable, and only where the defendant has had a prior opportunity to cross-examine [the witness].'"  *Id.* at 413 (alteration in original) (quoting *Crawford*, 541 U.S. at 59).  Animating the *Crawford* Court was its concern that "[l]eaving the regulation of out-of-court statements to the law of evidence would render the Confrontation Clause powerless to prevent even the most flagrant inquisitorial practices."  *Id.* at 51 (citations and internal quotation marks omitted); *see also id.* at 61 ("Where testimonial statements are involved, we do not think the Framers meant to leave the Sixth Amendment's protection to the vagaries of the rules of evidence, much less to amorphous notions of 'reliability.'").  Therefore, the proper Confrontation Clause inquiry under *Crawford* depends not merely on whether the drug ledgers were properly authenticated and admissible under the Federal Rules of Evidence, but whether they represent the "[i]nvolvement of government officers in the production of testimony with an eye toward trial" and were therefore "testimonial."  541 U.S. at 56 n.7.

In *Crawford*, the Court offered a broad definition of "testimonial" statements:

> Various formulations of this core class of testimonial statements exist: *ex parte* in-court testimony or its functional equivalent—that is, material such as affidavits, custodial examinations, prior testimony that the defendant was unable to cross-examine, or similar pretrial statements that declarants would reasonably expect to be used prosecutorially; extrajudicial statements . . . contained in formalized testimonial materials, such as affidavits, depositions, prior testimony, or confessions; statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial.

*Id.* at 51-52 (internal quotation marks and citations omitted).  In *Davis v. Washington*, 547 U.S. 813 (2006), the Court shed further light on our understanding of when statements are "testimonial": "They are testimonial when the circumstances objectively indicate that . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution. . . .  This is not to imply, however, that statements made in the absence of any interrogation are necessarily nontestimonial. The Framers were no more willing to exempt from cross-examination volunteered testimony or answers to open-ended questions than they were to exempt answers to detailed interrogation."  547 U.S. at 822 & n.1 (internal quotation marks, brackets, and citations omitted).

I agree with the majority that the ledgers here fall squarely within these various formulations of "testimonial" statements.  Undoubtedly, the ledgers represent the "[i]nvolvement of government officers in the production of testimony with an eye toward trial" and are clearly "statements that were made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial." *Crawford*, 541 U.S. at 52, 56 n.7.  And, although *Davis* makes it clear that "testimonial" statements need not be the product of formal interrogation, here, Valdez produced the ledgers during a proffer session with government officials, which was certainly akin to, if not in fact, a formal official interrogation.  After being indicted, Valdez and his attorney met with government officials to discuss the specifics of his criminal activities and the illegal activities of others.  In other words, "the primary purpose of the interrogation [was] to establish or prove past events potentially relevant to later criminal prosecution."

As *Davis* makes clear, that Valdez volunteered the drug ledgers recounting past criminal activities makes no difference.  *Davis*, 547 U.S. at 822 n.1 ("The Framers were no more willing to exempt from cross-examination volunteered

19

testimony . . . .").   In a sense, the drug ledgers are like Lord Cobham's inculpatory letter, which was read to the jury during the trial of Sir Walter Raleigh, *see Crawford*, 541 U.S. at 44—they recount past facts about a conspiracy implicating the defendant.   In a contemporary sense, the drug ledgers are like a written statement of a witness during police interrogation—they "deliberately recounted, in response to police questioning, how potentially criminal past events began and progressed. . . .   Such statements under official interrogation are an obvious substitute for live testimony, because they do precisely *what a witness does* on direct examination; they are inherently testimonial." *Davis*, 547 U.S. at 830.

Therefore, because the ledgers here are testimonial, they could be introduced at trial without violating the Confrontation Clause only if Valdez was unavailable and Jackson had a prior opportunity to cross-examine him.   *See Crawford*, 541 U.S. at 54, 59; *see also Melendez-Diaz*, 129 S. Ct. at 2531 ("A witness's testimony against a defendant is thus inadmissible unless the witness appears at trial or, if the witness is unavailable, the defendant had a prior opportunity for cross-examination.").   Since Jackson did not have an opportunity to cross-examine Valdez about the drug ledgers that he allegedly created, and because there is no indication that Valdez was unavailable to testify at Jackson's trial, the introduction of the drug ledgers violated Jackson's Sixth Amendment right to be confronted with the witnesses against him.

As such, I concur with the majority that the introduction of the drug ledgers violated the Confrontation Clause according to *Crawford* and its progeny.   The majority opinion clearly concludes, and its holding is determined by the fact, that the drug ledgers were testimonial evidence under *Crawford* and *Davis* and *Melendez-Diaz*.   Therefore, the opinion cannot be misread to suggest that there are exceptions to the Confrontation Clause for business records or statements by coconspirators per se or that the testimonial nature of the ledgers

No. 09-10850

turns on whether they are authenticated or admissible business records. While it is true that in *Crawford*, the Court said, "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy," 541 U.S. at 56, this isolated line must be read in its context. The quoted sentence can be found in a portion of the *Crawford* decision in which the Court was responding to Chief Justice Rehnquist's observation that, "'[t]here were always exceptions to the general rule of exclusion' of hearsay evidence," and that "[s]everal had become well established by 1791." *Id.* at 56 (quoting *id.* at 73 (Rehnquist, J., concurring in the judgment)). The Court rejected the argument that the historical roots of some hearsay exceptions justified admitting otherwise testimonial evidence, which happened to fall into one of these exceptions:

> [T]here is scant evidence that exceptions were invoked to admit testimonial statements against the accused in a *criminal case*. Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy. We do not infer from these that the Framers thought exceptions would apply even to prior testimony.

*Id.* at 56 (brackets, footnote, and citations omitted). The Court underscored that untangling the concept of testimonial statements from hearsay principles led it to disagree with Chief Justice Rehnquist's opinion:

> We cannot agree with THE CHIEF JUSTICE that the fact "[t]hat a statement might be testimonial does nothing to undermine the wisdom of one of these [hearsay] exceptions." Involvement of government officers in the production of testimony with an eye toward trial presents unique potential for prosecutorial abuse—a fact borne out time and again throughout a history with which the Framers were keenly familiar. This consideration does not evaporate when testimony happens to fall within some broad, modern hearsay exception, even if that exception might be justifiable in other circumstances.

*Id.* at 56 n.7 (citation omitted).

21

No. 09-10850

I firmly agree with the majority that the Supreme Court's recent decision in *Melendez-Diaz* expressly states that there is no per se rule that business records are non-testimonial. *See* Majority Op. at 7 n.5. In *Melendez-Diaz*, the Supreme Court was asked whether the Confrontation Clause tolerated admission of "certificates of analysis" that confirmed the content and weight of alleged drug substances without testimony by the laboratory technicians who conducted the tests and created the reports. The Court held that these records were testimonial statements barred by the Confrontation Clause. 129 S. Ct. at 2538. Among other things, the state argued "that the analysts' affidavits are admissible without confrontation because they are akin to the types of official and business records admissible at common law." *Id.* (internal quotation marks omitted). The Court expressly rejected this argument: "[T]he affidavits do not qualify as traditional official or business records, and even if they did, their authors would be subject to confrontation nonetheless." *Id.* The Court explained:

> [The state] . . . misunderstands the relationship between the business-and-official-records hearsay exceptions and the Confrontation Clause. As we stated in *Crawford*: "Most of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." *Business and public records are generally admissible absent confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial.* Whether or not they qualify as business or official records, the analysts' statements here—prepared specifically for use at petitioner's trial—were testimony against petitioner, and the analysts were subject to confrontation under the Sixth Amendment.

*Id.* at 2539-40 (citation omitted) (emphasis added). Therefore, *Melendez-Diaz* forecloses any suggestion that the proper authentication or admissibility of

No. 09-10850

evidence as a business record  determines whether introduction of the evidence is testimonial or violative of the Confrontation Clause.[2]

Other courts, notably the Second Circuit, have applied the foregoing analysis—deciding whether hearsay is testimonial under the Confrontation Clause independently from whether it satisfies an exception to the hearsay rule. *See United States v. Saget* 377 F.3d 223 (2d Cir. 2004) (Sotomayor, J.).[3] In *Saget*, decided months after *Crawford* was announced, the defendant argued that the

---

[2] I recognize that this court relied on the statement in *Crawford* that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy," 541 U.S. at 56, in *United States v. Morgan*, to hold that "after *Crawford*, business records are not testimonial in nature and their admission at trial is not a violation of the Confrontation Clause." 505 F.3d 332, 339 (5th Cir. 2007). And that we relied on the same statement in *United States v. Holmes*, when we said, in dicta, that "[s]tatements made by a co-conspirator during the course and in furtherance of a conspiracy are by their nature generally nontestimonial and thus are routinely admitted against an accused despite the absence of an opportunity for cross-examination." 406 F.3d 337, 348 (5th Cir. 2005). However, *Morgan*'s holding and the dicta in *Holmes* put too much emphasis on this isolated statement in *Crawford* and do exactly what *Crawford* proscribed: marrying the scope of the Confrontation Clause to a rule of evidence. We know that *Crawford* did not intend to carve out this large exception to its newly-minted rule because, as discussed above, *Crawford* itself recognized that though a statement may qualify as a hearsay exception, that does not vitiate the fact that the statement is testimonial and does not remove it from the "core concerns" of the Confrontation Clause. Moreover, as discussed above, *Melendez-Diaz* unequivocally says that evidence—even if properly classified within the hearsay exception for business records—does not foreclose Confrontation Clause scrutiny. Therefore, because the intervening decision in *Melendez-Diaz* contradicts our holding in *Morgan* and undermines the dicta in *Holmes*, we need not be bound by those aspects of our precedents. *See, e.g.*, *United States v. Setser*, 607 F.3d 128, 131 (5th Cir. 2010) ("binding precedent in this Court could change [by] an intervening decision by the Supreme Court"); *United States v. Rodriguez-Jaimes*, 481 F.3d 283, 288 (5th Cir. 2007) ("Absent an en banc or intervening Supreme Court decision, one panel of this court may not overrule a prior panel's decision.").

[3] *See also United States v. Caraballo*, 595 F.3d 1214, 1225-29 (11th Cir. 2010) (first determining that the disputed evidence "fall[s] squarely within an exception to hearsay" and then separately analyzing whether the evidence was testimonial). *But see, e.g.*, *United States v. Darling*, No. 09-20402, 2010 WL 3605761, at *8 (11th Cir. Sept. 17, 2010) ("if the . . . report qualified as a business record under Federal Rule of Evidence 803(6), there would be no constitutional violation" (citation omitted) (citing *Crawford*, 541 U.S. at 420)); *United States v. Mashek*, 606 F.3d 922, 930 (8th Cir. 2010) ("Business records under Rule 803(6) are non-testimonial statements" (citing *Crawford*, 541 U.S. at 420)).

introduction of out-of-court statements by a coconspirator violated his Confrontation Clause rights and were inadmissible hearsay because they did not satisfy Federal Rule of Evidence 804(b)(3) as statements against the declarant's penal interest. *Id.* at 224.[4] The court rejected both arguments. However, the court considered the Confrontation Clause argument *first*, and decided the statements were not testimonial; only *then*, did the court decide that the statements were admissible under the *Roberts* test[5] and the rules of evidence. *Id.* at 224-25, 227-30, 231. In other words, the Second Circuit did not hold that the introduction of the statements did not violate the Confrontation Clause simply because they were admissible under a hearsay exception. The court was clear about how the inquiry should proceed: "[T]he analysis of whether the admission of [the coconspirator's] statements violated the Confrontation Clause begins with the question of whether the statements are testimonial, triggering *Crawford*'s *per se* rule against their admission." *Id.* at 227.

In sum, I write separately to clarify my agreement with the majority's conclusion that the introduction of the drug ledgers violated Jackson's rights under the Confrontation Clause because the ledgers were testimonial statements. For these reasons, I respectfully concur in the majority's opinion and in the judgment.

---

[4] It is unclear from *Saget* why the Government sought only to introduce the statements under Rule 804(b)(3) and not as statements by a coconspirator under Rule 801(d)(2)(E).

[5] Following *Crawford*, other circuits and ours apply the *Roberts* test to determine the admissibility of non-testimonial, out-of-court statements. *See, e.g., Summers v. Detke*, 431 F.3d 861, 877 (5th Cir. 2005) ("With respect to the statements at issue here-nontestimonial out-of-court statements in furtherance of a conspiracy—it is clear that *Ohio v. Roberts*, . . . continues to control." (citing *Crawford*, 541 U.S. at 68)); *accord, e.g., Saget*, 377 F.3d at 230-31.