# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 14-51068

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

ALEJANDRA ANGELA CARMONA-RAMOS,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

February 10, 2016

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Western District of Texas
USDC No. 3:14-CR-312

Before STEWART, Chief Judge, and KING and HIGGINSON, Circuit Judges.

PER CURIAM:*

Defendant-Appellant Alejandra Angela Carmona-Ramos was convicted after a jury trial of attempting to transport an illegal alien for financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i).  Carmona-Ramos was apprehended using a sting operation: border patrol agents caught an illegal alien crossing the United States border; they seized the alien's phone; they then used the phone to set up a rendezvous point with an apparent smuggler;

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51068

a border patrol agent posed as the illegal alien at the meeting point; and Carmona-Ramos met the agent at the meeting point and began to lead him to a bus station. After being apprehended by law enforcement, Carmona-Ramos confessed to knowingly engaging in a scheme to assist an undocumented alien for money. Following her conviction, Carmona-Ramos timely appealed the jury's verdict and the district court's rulings on various grounds. For the reasons explained herein, we AFFIRM.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

On the evening of February 3, 2014, Border Patrol Agent Erik Lerch was on bike patrol in El Paso, Texas, close to the United States-Mexico border. During his patrol, he received a radio alert that there was an individual trying to cross the border.[1] When he responded to the area, he saw an individual run across the Cesar Chavez Border Highway and attempt to jump a fence on the other side. Agent Lerch detained the man—later identified as Antonio Allende-Agustin—and questioned him regarding his citizenship and whether he had documents allowing him to be in the United States. Allende-Agustin responded that he was a Mexican citizen and that he did not have documents. Agent Lerch then arrested Allende-Agustin and transported him to the local border patrol station for processing. Agent Lerch also recovered a cell phone from Allende-Agustin's pocket in a search incident to the arrest and turned it over to another border patrol agent.

Later that night, Border Patrol Agent David Marroquin and his partner used Allende-Agustin's cell phone to text someone that planned to meet with Allende-Agustin. They waited at an apartment building close to where Allende-Agustin was arrested, but their shift ended before anyone arrived.

---

[1] The district court sustained Carmona-Ramos' hearsay objection to the contents of the radio alert. However, Agent Lerch was able to testify that he responded to the area near the border.

2

No. 14-51068

At around midnight, Border Patrol Agents Salvador Del Valle and Samuel Cardenas took over the operation. Shortly after starting their shift, they went to the border patrol station to interview the "undocumented alien," Allende-Agustin. They also continued to monitor Allende-Agustin's cell phone for activity. At 6:44 A.M. the next day, they received a text message on Allende-Agustin's cell phone. The text message read, "are you in the same place?" and was from a number identified as "Cony." Agents Del Valle and Cardenas sent a response text message stating, "no I had to move I'm at a church." They continued to exchange text messages, and the two agents drove to the church at the described location. When they arrived, Agent Del Valle walked to the church and posed as an undocumented alien awaiting an alien smuggler. The text messages with Cony continued, and amongst other things, Cony sent a text message stating, "stay there there is a woman there walking."

After waiting at the church for about five to eight minutes, Agent Del Valle observed a female walking towards him. The woman—later identified as Carmona-Ramos—made eye contact with Del Valle and continued to walk towards him. Carmona-Ramos then gestured with her arm for Agent Del Valle to come towards her. When Agent Del Valle hesitated, she came closer, and Agent Del Valle told her that he was in the country illegally and that he was scared and nervous. She told him not to be afraid or act nervous and to follow her. She took him by the arm, and he began to follow her. Shortly thereafter, Carmona-Ramos called someone on her cell phone whom she addressed as "Concha," saying, "I've got him here. He's with me." She then handed the phone to Agent Del Valle. The woman on the phone identified herself as Concha to Agent Del Valle and told him to "[f]ollow the lady. Don't be afraid. Don't be nervous. She knows where to take you." After Carmona-Ramos ended

3

the call, she told Agent Del Valle that she was taking him to a bus stop and that they were going somewhere on the bus.

After walking together for a short time, a marked border patrol vehicle approached them. Upon seeing the vehicle, Carmona-Ramos told Agent Del Valle, "[s]tep back. You don't know me. Okay? You don't know me" and gestured for him to walk behind her. The uniformed driver of the marked vehicle, Border Patrol Agent James Walker, stopped Carmona-Ramos and Agent Del Valle and asked them if they had proper documentation to be in the United States legally. When neither of them could produce documents, Agent Walker pretended to arrest Agent Del Valle (who continued to pose as an undocumented alien), arrested Carmona-Ramos, and placed both of them in the back of his patrol car together. While they were in the back of the patrol car, Carmona-Ramos told Agent Del Valle to "[e]rase all the messages you have on the phone. Say that you don't know me. Don't tell them the truth. Remember that I have a child, and I don't want to get involved in this alien smuggling scheme."

Border Patrol Agent Martha Pedregon conducted a pat down search of Carmona-Ramos during the arrest and seized a cell phone. A forensic analysis of her phone and Allende-Agustin's phone showed that there had been no contact between the two on the phones. However, the number in Allende-Agustin's phone for "Cony" matched the number in Carmona-Ramos' phone for "Concha."

After the arrest, Carmona-Ramos was brought to the border patrol station and read her rights. After waiving her rights, she initially provided a written statement saying that she was merely showing the person outside the

church how to get to a bakery that was near the bus station. Agent Del Valle then entered the room and revealed himself as a border patrol agent.

Later, Border Patrol Agent Brendan McCarthy interviewed Carmona-Ramos for a sworn statement. In her sworn statement, Carmona-Ramos admitted that her previous written statement was a lie. She stated that she worked for Concha smuggling undocumented aliens in the United States, but this was her first time; she knew Concha paid $60, but she did not know how much she would be paid; Concha called and told her to go to the church and pick up the person there; Concha told her that the person was in the United States illegally; Carmona-Ramos knew that she was assisting an undocumented alien; and she knew it was illegal to smuggle undocumented aliens. Carmona-Ramos explained that Concha told her that she "was picking up a young person that had been out in the cold all night, and [she] was going to be paid a little money."

Carmona-Ramos was charged with alien transportation for financial gain in violation of 8 U.S.C. §§ 1324(a)(1)(A)(ii) and (a)(1)(B)(i). Specifically, the indictment charged that Carmona-Ramos, "knowing and in reckless disregard of the fact that a certain alien had come to, entered, and remained in the United States in violation of law, transported and moved, and attempted to transport and move such alien within the United States in furtherance of said violation of law, all done for purpose of commercial advantage and private financial gain." Following a two-day trial, Carmona-Ramos was found guilty by a jury. The district court sentenced her to four years' probation. She timely appealed.

No. 14-51068

## II.    DISCUSSION

Carmona-Ramos raises three issues on appeal:  (1) she challenges the sufficiency of the evidence to support her conviction; (2) she argues that the admission of certain testimony violated her rights under the Sixth Amendment's Confrontation Clause; and (3) she claims that a Government witness provided improper expert testimony regarding the profile of a typical alien smuggler.  We address each issue in turn.

### A.

Carmona-Ramos first challenges the sufficiency of the Government's evidence to support her conviction.  Because Carmona-Ramos preserved the issue below, we engage in a *de novo* review to "determine whether a reasonable jury could find that the evidence establishes the guilt of the defendant beyond a reasonable doubt."  *United States v. Williams*, 507 F.3d 905, 908 (5th Cir. 2007).  "We view the evidence in the light most favorable to the government and give the government the benefit of all reasonable inferences and credibility choices."  *Id.*

Before delving into the evidence presented at trial, we first address the primary point of contention between the parties:  the elements that the Government was required to prove to convict Carmona-Ramos.  To establish a violation of 8 U.S.C. § 1324(a)(1)(A)(ii), the Government must prove the following elements:  (1) the defendant transported or attempted to transport an alien within the United States, (2) the alien was in the United States illegally, (3) the defendant knew of or recklessly disregarded the fact that the alien was in the United States illegally, and (4) the defendant acted willfully in furtherance of the alien's violation of the law.  *See* 8 U.S.C. § 1324(a)(1)(A)(ii); *see also United States v. Romero-Cruz*, 201 F.3d 374, 378

6

No. 14-51068

(5th Cir. 2000); *United States v. Silveus*, 542 F.3d 993, 1002 (3d Cir. 2008). 8 U.S.C. § 1324(a)(1)(B)(i) adds the following aggravating factor: the transportation offense in § 1324(a)(1)(A)(ii) was committed "for the purpose of commercial advantage or private financial gain." *See* 8 U.S.C. § 1324(a)(1)(B)(i); *see also United States v. Williams*, 449 F.3d 635, 646 (5th Cir. 2006).

At trial, the district court provided the following jury instruction regarding the elements of the offense, which tracks the statute and the elements outlined by case law:

> First: that an alien had entered or remained in the United States in violation of the law; and
>
> Second: that the defendant knew or recklessly disregarded the fact that the alien was in the United States in violation of the law; and
>
> Third: that the defendant transported or moved, or attempted to transport or move the alien within the United States with intent to further the alien's unlawful presence; and
>
> Fourth: that the defendant transported or moved, or attempted to transport or move the alien within the United States for the purpose of commercial advantage or private financial gain.

On appeal, the Government argues that it was not required to prove the first element in the jury charge because it was proceeding under an "attempt" theory. In its briefing, the Government recites the well-known principle that factual impossibility is not a defense to an attempt offense. The Government further notes that at least one other circuit has upheld a conviction under its construction of the statute. *See United States v. Medina-Garcia*, 918 F.2d 4, 8

7

No. 14-51068

(1st Cir. 1990). However, the Government did not advance that theory at trial[2] and the jury charge—which the Government agreed to—did not include an instruction explaining that theory of criminal liability.

In response, Carmona-Ramos argues that the plain language of the statute suggests that the Government must prove element one even in an "attempt" case.[3] In particular, she points out that "attempt" only appears in the second clause of the statutory provision, and it modifies "transport or move." She further notes that, unlike the use of "attempt" in Section 1324(a)(1)(A)(ii), the other statutory schemes cited by the Government include an "attempt" provision that applies to the entire substantive offense. *See* 18 U.S.C. §§ 2251, 2421–2423; 21 U.S.C. § 846. Carmona-Ramos' position also finds support in case law from other circuits. *See United States v. Vega*, 184 F. App'x 236, 243–44 (3d Cir. 2006); *see also United States v. Flores-Perez*, 311 F. App'x 69, 70 (9th Cir. 2009).

---

[2] The Government began its argument in closing by identifying Allende-Agustin as an illegal alien—in fact, the Government argued that element one was met because Allende-Agustin "is an alien who entered the United States who was apprehended by Border Patrol Agent Lerch." The Government never argued that the jury could skip element one; instead, the prosecutor proceeded to present an attempt theory in relation to element three (*i.e.*, the transportation element). For example, the Government argued: "Ask yourself: What would have the Defendant's conduct been if, instead of Agent Del Valle, [Allende-Agustin] was there? If you believe that she would have done the exact same things that she did on February 4th, if it was the actual undocumented alien who was present at that church instead of Agent Del Valle, then it's the Government's position that you must find her guilty of an attempt to move an undocumented alien."

[3] Carmona-Ramos' statutory argument begins with the basic principle that "[t]o attempt a federal offense is not, of itself, a federal crime, and there is no one general federal statute proscribing all attempts to commit federal offenses." *United States v. Castro-Trevino*, 464 F.3d 536, 541–42 (5th Cir. 2006) (citation and quotation marks omitted) (alteration in original).

No. 14-51068

Regardless, because we hold that the Government presented proof beyond a reasonable doubt to convict Carmona-Ramos on the actual theory of the offense presented to the jury, we need not address the validity of the Government's construction of an attempt offense under 8 U.S.C. § 1324(a)(1)(A)(ii).

Carmona-Ramos does not challenge the sufficiency of the evidence to establish elements one[4] and four of the offense, instead arguing that there was no evidence showing that she (1) knew of or recklessly disregarded Allende-Agustin's illegal status (element two), or (2) attempted to transport or move Allende-Agustin within the United States with intent to further Allende-Agustin's unlawful presence (element three). Carmona-Ramos rightly points out that there is no evidence showing that she previously met Allende-Agustin or had direct contact with Allende-Agustin. However, her conclusion based on these points is flawed.

The evidence at trial showed that Concha (the alien smuggler) was in contact with Allende-Agustin and knew of Allende-Agustin's status. Concha then enlisted the help of Carmona-Ramos to meet Allende-Agustin and guide him to a bus station. Carmona-Ramos may not have known Allende-Agustin's name or what he looked like, but when she went to the church and met Agent Del Valle, her purpose and intent was to meet and help Allende-Agustin. Further, she knew that the person she was supposed to meet and help— Allende-Agustin—was an illegal alien. In fact, she specifically confessed that:

---

[4] Carmona-Ramos' concession regarding whether there is sufficient evidence to establish Allende-Agustin's illegal status is largely contingent on the court's decision regarding her Sixth Amendment challenge. As we explain *infra*, there is sufficient evidence to establish element one of the offense even without the challenged testimony.

No. 14-51068

(1) she worked for Concha smuggling undocumented aliens in the United States; (2) Concha called and told her to go to the church and pick up the person there; (3) Concha told her that the person was in the United States illegally; and (4) she knew that she was assisting an undocumented alien.

Of course, Carmona-Ramos did not actually transport Allende-Agustin; but, as previously discussed, element three of the offense only requires that she attempted to transport him. Therefore, she is criminally liable because she would have transported Allende-Agustin "had the attendant circumstances been as [she] believed them to be." *United States v. Contreras*, 950 F.2d 232, 237 (5th Cir.1991).[5]

In summary, the evidence at trial established that Carmona-Ramos knew "that an alien ha[d] come to, entered, or remain[ed] in the United States in violation of law [and] attempt[ed] to transport or move such alien within the United States." *See* 8 U.S.C. § 1324(a)(1)(A)(ii). Thus, there was sufficient evidence to support her conviction.

**B.**

Carmona-Ramos next argues that the district court violated her Sixth Amendment right to confront witnesses against her by admitting hearsay

---

[5] Although the district court included the word "attempt" in element three of the jury charge, the Government did not request and the court did not provide an instruction explaining to the jury the law of attempt. However, because Carmona-Ramos did not object to the instruction, we apply the plain error standard of review. *See United States v. Crow*, 164 F.3d 229, 235 (5th Cir. 1999). We find no plain error, as "a miscarriage of justice did not result from the failure to include 'attempt' language in the jury charge and the substantial evidence supporting the jury's finding of guilt beyond a reasonable doubt was not overcome." *Id.* at 235–36. The Government clearly articulated an attempt theory as to element three of the offense, and the evidence—most notably her confession—undoubtedly shows that Carmona-Ramos was sent by Concha to transport Allende-Agustin, whom Carmona-Ramos knew to be an illegal alien. We, therefore, need not address whether Carmona-Ramos waived a challenge to the jury instruction by failing to raise it on appeal.

evidence consisting of out-of-court statements that Allende-Agustin made to border patrol agents regarding his alienage.  Specifically, Agent Lerch testified over a Confrontation Clause objection that he detained Allende-Agustin and questioned him regarding his citizenship and whether he had documents allowing him to be in the United States; he further testified that Allende-Agustin responded that he was a Mexican citizen and that he did not have documents.

"We review Confrontation Clause challenges *de novo*, subject to harmless error review."  *United States v. Santos*, 589 F.3d 759, 762 (5th Cir. 2009) (citation omitted).  "[T]he Confrontation Clause prohibits (1) testimonial out-of-court statements; (2) made by a person who does not appear at trial; (3) received against the accused; (4) to establish the truth of the matter asserted; (5) unless the declarant is unavailable and the defendant had a prior opportunity to cross examine him."  *United States v. Jackson*, 636 F.3d 687, 695 (5th Cir. 2011) (alteration in original) (citation omitted); *see also Crawford v. Washington*, 541 U.S. 36 (2004).

Four of the five *Jackson* elements are uncontested by the parties: Allende-Agustin's out-of-court statements were testimonial under *Crawford* because they were made during custodial questioning and under circumstances that a speaker would have reasonably interpreted as potentially relevant to a later prosecution; Allende-Agustin did not appear at trial; Allende-Agustin's statements were used at trial against Carmona-Ramos; and Carmona-Ramos did not have a prior opportunity to cross-examine Allende-Agustin.  Thus, there are only two remaining points of contention: (1) whether Allende-Agustin's out-of-court statements were offered for the truth of the matter asserted; and (2) even if admitting Allende-Agustin's statements was a

Confrontation Clause violation, whether that violation constitutes harmless error.

As an initial matter, Allende-Agustin's out-of-court statements were hearsay evidence, as they were clearly introduced for the truth of the matter asserted.  During closing arguments, the prosecution explained that the first element of the offense requires that "an alien had to have entered or remained in the United States."  The prosecution went on to argue: "we know that there was an alien, we know that he entered the United States, and we know that the person was [Allende-Agustin]."  Allende-Agustin's statements regarding his alienage directly supported that assertion to the jury.  Thus, the district court erred in admitting the challenged hearsay testimony; however, as we explain below, we conclude that the district court's error was harmless.

"A defendant convicted on the basis of constitutionally inadmissible Confrontation Clause evidence is entitled to a new trial unless it was harmless in that there was no reasonable possibility that the evidence complained of might have contributed to the conviction." *Jackson*, 636 F.3d at 697 (quotation marks, citation, and alteration omitted).  "The government bears the burden of establishing the error is harmless beyond a reasonable doubt."  *Id.* (citation omitted).  When determining whether a Sixth Amendment Confrontation Clause violation is harmless, we consider, amongst other things, "the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, . . . and of course, the overall strength of the prosecution's case."  *United States v. Duron-Caldera*, 737 F.3d 988, 996 (5th Cir. 2013) (citation omitted).

Here, there was strong evidence corroborating the challenged testimony that Allende-Agustin had illegally entered or remained in the United States.

No. 14-51068

First, Carmona-Ramos confessed that she knew the individual she was sent to transport—Allende-Agustin—was an illegal alien; she also confessed that she was in the alien-smuggling business with Concha and that she was involved in an alien-smuggling scheme on the day she was arrested.  Second, the circumstances of Allende-Agustin's arrest suggest that Allende-Agustin had illegally entered the United States:  Agent Lerch responded to a call close to the United States-Mexico border; he then saw Allende-Agustin run across a highway close to the border—a highway with no pedestrian walkways—and attempt to jump a fence on the other side; and Allende-Agustin was apprehended and taken to the border patrol station.  Finally, the nature of the subsequent sting operation and other testimony by border patrol agents strongly suggests Allende-Agustin's illegal alienage:  after he was apprehended, border patrol agents used Allende-Agustin's phone to communicate with Concha, a woman that Carmona-Ramos admitted was an alien smuggler; Agent Del Valle testified that, before he initiated the sting operation, he went to the border patrol station to interview the "undocumented alien," Allende-Agustin; and Agent Cardenas testified that, during the sting operation, he received a text message on Allende-Agustin's cell phone—"the phone that [he] seized from the subject that had illegally entered."[6]

Of course, the prosecution's case was also otherwise very strong, as it was supported by evidence of Carmona-Ramos' confession, her statements to

---

[6] Although not under harmless error analysis, we have sustained convictions under 8 U.S.C. § 1324(a) with similar evidence of an alien's illegal status.  *See United States v. DeLeon*, 484 F. App'x 920, 927–28 (5th Cir. 2012).

13

law enforcement, her conduct on the day she was apprehended, and the overall nature of the sting operation.

Accordingly, we conclude that the admission of the challenged testimony does not constitute reversible error.

### C.

Carmona-Ramos' final challenge on appeal involves what she describes as improper alien-smuggler-profile testimony. We review a district court's evidentiary rulings for abuse of discretion, subject to harmless error review. *See United States v. Yanez Sosa*, 513 F.3d 194, 200–01 (5th Cir. 2008). Although the circumstances surrounding the introduction of this testimony are problematic, any error by the district court in admitting the testimony was harmless.

The challenged testimony took place during the re-direct examination of Agent Del Valle. The Government began its questioning by asking Agent Del Valle if he had "participated in other similar operations as this one." Agent Del Valle answered, "Yes." The Government then asked a series of questions regarding how alien smugglers typically act, including whether "it is common for smugglers to be reassuring" and "to try to give agents posing as aliens confidence that everything . . . is going to be okay?" Agent Del Valle responded, "Yes" to these questions. Later, the Government asked Agent Del Valle if he "had any reason to doubt that it was Ms. Carmona who approached you that morning as a smuggler," to which he responded, "No."

We begin by noting that Agent Del Valle's statements were not proper lay opinion testimony, as they were based on specialized knowledge. *See* Fed. R. Evid. 701, 702; *see also United States v. Riddle*, 103 F.3d 423, 428 (5th Cir. 1997) (stating that "a lay opinion must be based on personal perception, [and]

14

must be one that a normal person would form from those perceptions" (quotation marks and citation omitted)).[7]

On appeal, the Government does not assert that the statements were proper lay opinion testimony, instead arguing that it introduced the challenged testimony as an expert opinion.  Tellingly, the Government did not notice any expert witnesses, did not attempt to qualify Agent Del Valle as an expert, and explicitly represented to the district court that it would not be introducing expert testimony.  *See United States v. Lopez-Moreno*, 420 F.3d 420, 438–40 (5th Cir. 2005) (King, C.J., concurring) (collecting cases) (outlining the problem with border patrol agents providing expert opinions based on specialized knowledge while testifying as lay witnesses); *see also United States v. Whittington*, 269 F. App'x 388, 408 (5th Cir. 2008) (finding error where a government agent provided expert testimony without the district court qualifying him as an expert at trial).

Despite the Government's shifting theory of admissibility, we conclude that any error in admitting the challenged testimony was harmless.  The crux of Agent Del Valle's testimony was that Carmona-Ramos' conduct on the day of the sting operation was consistent with the behavior of someone engaged in the business of alien smuggling.  However, Carmona-Ramos explicitly and unambiguously confessed to working for Concha smuggling undocumented aliens in the United States for money.  In addition, prior to her confession, she told Agent Del Valle—while he was still undercover—to lie to law enforcement

---

[7] We have previously held that government agents may provide lay testimony using some specialized knowledge if the testimony was "based on first-hand observations in a specific investigation."  *United States v. El-Mezain*, 664 F.3d 467, 514 (5th Cir. 2011).  However, Agent Del Valle's testimony was based on his experience with "similar operations," not this specific case.

for her because she did not "want to get involved in this alien smuggling scheme." These statements, together with her conduct, clearly established that she was working as an alien smuggler on the day that she was apprehended, independent of Agent Del Valle's testimony on re-direct examination.

Therefore, we hold that Carmona-Ramos' challenge to Agent Del Valle's testimony does not constitute reversible error. *See United States v. Mendoza-Medina*, 346 F.3d 121, 129 (5th Cir. 2003) (holding admission of improper expert testimony harmless, where defendant confessed to the offense and the confession was corroborated by other evidence); *United States v. Ballard*, 586 F.2d 1060, 1062 (5th Cir. 1978) (holding error in admission of hearsay testimony harmless "in view of appellant's confession and the other overwhelming evidence of her guilt").

### III.    CONCLUSION

In short, the Government's case was not error free. Nonetheless, no single error or cumulation of errors warrants reversal of the conviction. Carmona-Ramos confessed to the essential elements of the offense; her confession was unambiguous and unassailed; and her confession was corroborated by other evidence, including her conduct on the day she was apprehended. We therefore AFFIRM Carmona-Ramos' conviction.