# REVISED FEBRUARY 26, 2002
# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

------------

No. 01-50200

------------

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

VERSUS

ROBERTO CERVANTES-NAVA,
A/K/A ROBERTO NAVA CERVANTES, A/K/A ROBERTO CERVANTES-NOVA,

Defendant-Appellant.

------------

Appeal from the United States District Court
for the Western District of Texas

------------

February 4, 2002

Before JOLLY, SMITH, and BENAVIDES,
 Circuit Judges.

JERRY E. SMITH, Circuit Judge:

The district court found Roberto Cervantes-Nava guilty of illegally re-entering the United States in violation of 8 U.S.C. § 1326 and imposed an increase of sixteen in his base offense level for a driving while intoxicated ("DWI") conviction. Because, in this criminal case, the federal courts cannot alter the derivative citizenship requirements of the Immigration and Nationality Act ("INA") to grant Cervantes-Nava citizenship, we affirm the conviction despite his equal protection challenge. Because this court recently has concluded that Texas DWI is not an aggravated felony, we vacate the sentence and remand for resentencing.

### I.

Maria de Cervantes ("Maria") was born in the United States in 1923 and lived there until moving to Mexico at age eleven. She married Pedro Cervantes Juarez, a citizen of Mexico. In August 1952, Maria began working as a live-in housekeeper in the United States, residing in the United States during the week and returning on the weekends to Mexico, where her husband and sons lived.

In 1957, Maria gave birth to Cervantes-Nava in Mexico; he was the legitimate child of Pedro Cervantes Juarez. Maria had been physically present in the United States for eleven years but not for a period of five years after reaching the age of fourteen. The parties agree that her presence in the United States was short of the five years necessary for Cervantes-Nava to obtain derivative citizenship under the INA.

In 1965, Maria filed with the Immigration and Naturalization Service ("INS") an application for Cervantes-Nava's certification of citizenship. The INS denied the application because Maria had not satisfied the residency requirements necessary to confer citizenship on Cervantes-Nava. If Cervantes-Nava had been an *illegitimate* child, he would have satisfied the requirements for derivative citizenship.

In 1972, Cervantes-Nava became a lawful permanent resident at the age of fifteen. In 1993, an immigration judge deported him to Mexico because of convictions of two theft counts and because of the absence of family ties to the area. Despite the deportation order, Cervantes-Nava returned to the United States.

### II.

Cervantes-Nava stipulated to the facts underlying the charge of illegal re-entry into the United States after deportation but disputed his status as an alien, challenging the constitutionality of the derivative citizenship laws that classified him as a non-citizen. He argued that the INA cannot constitutionally impose a five-year continuous residency requirement on mothers of legitimate children while requiring only a one-year requirement for mothers of illegitimate children. The district court rejected this argument, concluding that Cervantes-Nava was not a citizen.

The government filed a notice to enhance penalty, claiming that Cervantes-Nava's DWI conviction in Texas state court qualified as an aggravated felony conviction and justified an enhanced sentence under 18 U.S.C. § 16(b). The court rejected Cervantes-Nava's argument that Texas DWI is not a crime of violence and enhanced the sentence by sixteen levels. This yielded a guideline range of 46-57 months, and the court sentenced him to 46 months' imprisonment.

### III.

We begin by examining the INA's derivative citizenship provisions.[1] At the time of Cervantes's birth,[2] the parental residency requirements of the INA benefited illegitimate

---

[1] The Fourteenth Amendment's Citizenship Clause does not apply to Cervantes-Nava, because he was not "born or naturalized in the United States." U.S. CONST. amend. XIV. Any right to citizenship must be granted by Congress pursuant to its powers under U.S. CONST. art. 1, § 8, cl. 4 (granting Congress the power "To establish a uniform Rule of Naturalization").

[2] The parties agree that the law in effect at the time of Cervantes-Nava's birth should govern his alien status. *United States v. Gomez-Orozco*, 188 F.3d 422, 426-27 (7th Cir. 1999) (looking to law at time of birth).

children to the detriment of legitimate children.

Citizen fathers and wed citizen mothers faced longer residency requirements than did unwed citizen mothers, making it easier for illegitimate children born abroad to obtain citizenship. Section 301(a)(7) of the INA governed generally the citizenship of children born outside the United States to a citizen parent and alien parent and required that the citizen parent's cumulative residency in the United States equal at least ten years and that the parent spend five of those years in the United States after age fourteen.[3] Section 309(c) governed the citizenship of illegitimate children born abroad to citizen mothers and imposed only the requirement that the citizen mother reside in the United States for a year

---

[3] INA § 301(a)(7), Pub. L. No. 414, 66 Stat. 163, 236 (June 27, 1952) (codified at 8 U.S.C. § 1401(a)(7)(1952)), granted citizenship at birth to

[A] person born outside the geographical limits of the United States or its outlying possessions of parents one of whom is an alien, and the other a citizen of the United States who, prior to the birth of such person, was physically present in the United States for a period or periods totaling not less than ten years, at least five of which were after attaining the age of fourteen years . . . .

Congress amended this statute effective in 1986. Pub. L. No. 99-653, § 12, 100 Stat. 3655, 3657 (Nov. 14, 1986). The current version tracks the same language but requires that the citizen parent spend a total of five years in the United States and at least two years in the United States after age fourteen. 8 U.S.C. § 1401(g) (1994). The current version favors unwed mothers, but favors them less than did the version in effect at the time of Cervantes-Nava's birth.

continuously before the child's birth.[4] In sum, the statutory scheme established more lenient residency requirements for unwed citizen mothers than for married mothers, married fathers, and unwed fathers.

## IV.

Cervantes-Nava argues that the government cannot carry its burden of proving his alien status by relying on the denial of citizenship under immigration statutes that he claims are unconstitutional. The premise of Cervantes-Nava's argument is correct—alien status counts as an element of the illegal re-entry charge that the United States must prove beyond a reasonable doubt.[5] As proof, the

---

[4] INA § 309(c), 66 Stat. at 238-39 (codified at 8 U.S.C. § 1409(c)(1952)), established residency requirements for the unwed citizen mothers of illegitimate children born abroad:

[A] person born, on or after the effective date of this chapter [December 23, 1952], outside the United States and out of wedlock shall be held to have acquired at birth the nationality status of his mother, if the mother had the nationality of the United States at the time of such person's birth, and if the mother had previously been physically present in the United States or one of its outlying possessions for a continuous period of one year.

The relevant portions of § 309(c) are unchanged and are codified at 8 U.S.C. § 1409(c) (1994).

[5] The statute criminalizing illegal re-entry, 8 U.S.C. § 1326, repeatedly uses the word "alien," and the Ninth Circuit has inferred that the United States must prove alien status as an element. *United States v. Marin Cuevas*, 147 F.3d 889, 894 (9th Cir. 1998). In *dictum*, we have listed alien status as an element of the crime. *United States v.*
(continued...)

3

government presented copies of the 1965 denial of citizenship and the immigration judge's 1993 order deporting Cervantes-Nava.[6] Cervantes-Nava does not challenge a single fact underlying these orders and concedes that the derivative citizenship statues at the time of his birth made him an alien rather than a citizen.

We will assume, *arguendo*, the unconstitutionality of the derivative citizenship statutes and will consider whether that assumed unconstitutionality would disprove the alienage element of the illegal re-entry conviction. That hypothetical inquiry leads us to conclude that if a court found the derivative citizenship statutes unconstitutional, it either would sever the more lenient residency requirement for citizen mothers of illegitimate children or would strike down the INA in its entirety. Neither remedy would result in Cervantes-Nava's being granted citizenship. Because any judicial interpretation of the INA would classify him as an alien, the government has met its burden of proving his alien status even if the derivative citizen-

ship statutes are unconstitutional.[7]

A court reviewing the 1965 denial of citizenship or 1993 deportation order and finding the statute unconstitutional could correct the constitutional infirmity either by severing the unconstitutional provisions or by striking down the statute in its entirety.[8] We examine these possibilities in turn.

### A.

Theoretically, a court would have two severance options to cure the equal protection problems of which Cervantes-Nava complains.[9] A court (1) could sever the stringent,

---

[5](...continued)
*Cabrera-Teran*, 168 F.3d 141, 143-44 (5th Cir. 1999).

[6] The government does not argue that these administrative decisions, standing alone, should establish Cervantes-Nava's alien status. We decline to decide the case on this ground. Giving the administrative decisions such sweeping preclusive effect would raise serious constitutional questions, because neither the 1965 application for citizenship nor the 1993 deportation proceeding included the full range of constitutional rights available in a criminal trial. *See United States v. Mendoza-Lopez*, 481 U.S. 828, 839 & n.15 (1987) (refusing to grant preclusive effect to deportation hearing because aliens lacked opportunity for meaningful judicial review).

[7] Naturally, this means that we do not need to address the constitutional issue.

[8] Courts may not grant citizenship directly under their equitable powers. *INS v. Pangilinan*, 486 U.S. 875, 883-84 (1988) ("More fundamentally, however, the power to make someone a citizen of the United States has not been conferred upon the federal courts, like mandamus or injunction, as one of their generally applicable equitable powers."); *Fedorenko v. United States*, 449 U.S. 490, 517 (1981) (citation omitted) ("Once it has been determined that a person does not qualify for citizenship, . . . the district court has no discretion to ignore the defect and grant citizenship."); *United States v. Ginsberg*, 243 U.S. 472, 474 (1917) ("An alien who seeks political rights as a member of this nation can rightfully obtain them only upon the terms and conditions specified by Congress. Courts are without the authority to sanction changes or modifications."). Thus, the only potential remedy in this case would be to grant citizenship indirectly through statutory constructionSSeither via severance or by striking down the statute altogether.

[9] Outside the immigration context, courts often sever parts of statutes to satisfy the Equal Protection Clause. *E.g.*, *Califano v. Westcott*, 443 U.S. (continued...)

default parental residency requirement of § 301(a)(7) and expand citizenship to both legitimate and illegitimate children under § 309(c) or (2) could sever the more lenient parental residency requirement of § 309(c) and apply the more stringent, default requirement of § 301(a)(7) to both legitimate and illegitimate children.[10]

The first option, however, would not cure the constitutional defect, because severance of §301(a)(7) would not suffice to eliminate the unconstitutional distinction between legitimate and illegitimate children, given that §309(c) specifically confers benefits on children born "out of wedlock." For these benefits to be extended to legitimate children, we not only have to sever §301(a)(7), but also would have to rewrite §309(c). We decline to engage in legislative draftsmanship of this sort.[11]

Thus, if a court were to use severance to cure the unconstitutionality, it would simply sever §309(c) and leave the rest of the statute intact. Such a construction would not result in Cervantes Nava's obtaining citizenship.

## B.

The alternative to severance is to strike down the INA in its entirety. Because the Constitution does not grant Cervantes-Nava citizenship, this option still would leave him without any putative source of citizenship and would not affect his status as an alien.

Because there is no viable construction of the INA under which Cervantes-Nava would be a citizen, the district court properly found that the government had proven his alien status beyond a reasonable doubt. Thus, the conviction must stand.

## V.

The district court, under 18 U.S.C. § 16(b), enhanced Cervantes-Nava's base offense level by sixteen for a Texas state DWI conviction. We review statutory and guideline interpretations *de novo*. *United States v. Chapa-Garza*, 243 F.3d 921, 924 (5th Cir. 2001).

While this case was on appeal, we held in another case that Texas DWI is not a crime of

---

[9](...continued) 76, 89-91 (1979). Courts have the power to sever parts of the INA as well. *INS v. Chadha*, 462 U.S. 919, 932 (1983) (severing one-house veto from remainder of the INA). It remains uncertain, however, whether courts may sever portions of the INA in a manner that expands citizenship. *See Nguyen v. INS*, 533 U.S. 53, __, 121 S.Ct. 2053, 2065 (2001) (reserving the question whether courts may sever portions of the INA to expand citizenship).

[10] A court sustaining an equal protection claim has "two remedial alternatives: [It] may either declare [the statute] a nullity and order that its benefits not extend to the class that the legislature intended to benefit, or it may extend the coverage of the statute to include those who are aggrieved by the exclusion." *Heckler v. Mathews*, 465 U.S. 728, 738 (1984) (quoting *Welsh v. United States*, 398 U.S. 333, 361 (1970) (Harlan, J., concurring)).

[11] Courts should select the severance option (continued...)

---

[11](...continued) most compatible with the statute's original text and structure, because severance is based on the assumption that Congress would have enacted the remainder of the law absent the severed portion. *New York v. United States*, 505 U.S. 144, 186 (1992). For example, we cannot sever portions of the statute where "the provisions are inseparable by virtue of their inherent character." *Carter v. Carter Coal Co.*, 298 U.S. 238, 322 (1936).

violence or an aggravated felony under § 16(b). *Id.* at 923-28. Changes in sentencing law between sentencing and appeal that benefit the defendant require us to reverse and remand for resentencing. *United States v. Miranda*, 248 F.3d 434, 445 (5th Cir.), *cert. denied*, 122 S. Ct. 410 (2001). The district court should recalculate Cervantes-Nava's sentence without the sixteen-level enhancement.

The judgment of conviction is AFFIRMED. The judgment of sentence is VACATED and REMANDED for resentencing.